Good morning, your honors. May the police escort. My name is Ji Xianli and I represent Petitioner. In this case, the BIA acknowledged that Petitioner has a genuine fear of reprisal killing by drug gangsters in China. However, the BIA finds that objective evidence supporting such a fear is lacking. The BIA is mistaken in this regard. Could you tell me what the standard of review in this case is? I was a little confused when you said in your brief that the standard of review is the deferential substantial evidence and not de novo. Isn't it de novo in this case? I believe it's de novo because it's just a legal issue involved. Continue on. I just wanted to make that clear. Thank you, your honor. First of all, it is clear in this case that the immigration judge made a specific finding as to Petitioner's credibility. The immigration judge found Petitioner to be a credible witness, and the BIA has not disturbed the immigration judge's credibility determination favorable to my client. So, therefore... Giving her all the credibility in the world, Mr. Lee, the fact remains that the testimony which your client gave and the documentary evidence that she submitted talks about nationwide systemic corruption of the authorities in China. And the Board of Immigration Appeals found that was insufficient to prove that there was acquiescence in the possibility of torture if she were to return because there was no evidence that the corruption was particularized to drug gangsters and to the possibility or probability that she would be tortured. Do you think that the evidence of generalized corruption is sufficient to show the probability that she would be tortured? I do think so, your honor. First of all, I'm not aware of any statutory authority or regulatory authority that require a specific instance of collusion between the drug traffickers and the government to sustain Petitioner's burden to show the connection, the acquiescence by the public officials. And secondly, I believe the country reports thus indicate there is direct involvement by the public officials in organized crimes. When we think about organized crimes, we always think about drug trafficking is part of organized, is always run by organized crime groups. So therefore, I think the court can easily make a reasonable inference that... I thought that the documentary evidence as to public involvement, public officials' involvement in organized crime had more to do with the... Human trafficking. Human trafficking. Yeah, and the prostitution. But is your argument that any government that is complicit in gangster human trafficking would likely be more likely than not complicit in following what drug gangsters tell them to do? Yes, your honor. First of all, I think the country reports, since the drug trafficking is beyond the scope of the country reports, because the country reports focus on human rights violations. So therefore, the drug trafficking is more in the realm of criminal prosecution. So therefore, the country reports does not pay any attention to drug trafficking. Maybe that's why the country reports has made no specific reference to drug trafficking in its entire report. I pretty much read the entire report. I didn't see one word coming out relating to... It didn't say anything about corruption in granting building permits either. That's right, your honor. But it does indicate there is public officials' complicity in organized crime. And we all know that the public drug trafficking is always part of organized crime. And I think it's also well established the petitioner's testimony alone may sustain the burden of proof. And in this case, the petitioner clearly testified that she would be killed if she goes back. Let's assume she was found creditable, so nobody disputes what she said. I think the dispute and the question, and maybe you want to clarify, is the basis what in this record shows that the government is more likely than not to acquiesce in her torture. Yes, sir. First of all, I said that the country report suggests that there's direct involvement by the public officials in organized crime. And secondly, there's systemic corruption. But systemic corruption, which means no one at whatever level is beyond suspicion when it comes to corruption. And drug trafficking, if drug trafficking is an exception, then there won't be such thing as systemic corruption. Well, the Chinese press reports, which were produced by the Attorney General, and I don't know if I pronounced it right, the Xingua New Agency, say that the Chinese government is resolutely opposed to drug trafficking and employs the full extent of the law in crushing it. Yeah, exactly, Your Honor. Also, the country report says the Chinese government is cutting down hard on human trafficking as well as prostitution. And then, on the other hand, you can see that human trafficking is rampant and prostitution is widespread in China. And also, if you look at the news article report, and I guess the reports that you just said to are from the Chinese government, the agencies run by the Chinese government. If you look at the – there's one – I think one news report by the Western media, clearly indicates that the Chinese government's effort has very limited success in cracking down on drug trafficking. Well, furthermore, it's the government saying we're doing it, we're cracking down, as opposed to someone else saying the government is cracking down. There's no mention of gangsters in any of these reports. Is there? Not a gangster. It's just organized crime groups. Because your client was involved with gangsters. Is that correct? That's right, Your Honor. All right. I always thought that gangsters also means – it's just another way, popular way of saying that organized crime group. And also, Your Honor, I believe the petitioner's personal experience also supports her fear because she herself was subjected to an inhumane abortion when she was in China. So how could one expect the Chinese government officials who persecuted her on the one hand and then on the other hand to protect her from the torturous act by the drug gangsters? But you don't have a claim for asylum based on that. No, no, no, Your Honor. But as the court has in other cases has held that the country condition of gross human rights violation must be considered when it adjudicates the petitioner's care claim. And also, Your Honor, I believe that the BIA is clear around saying that the petitioner's claim of being killed is just speculative. And I don't think – there is actually in this case the concrete evidence to support the petitioner's fear of being killed by the gangsters. And just look at – in this case, we look at someone who was similarly situated. And we have evidence in the record showing that there was a Chinese woman who was killed by the very same – But in Saipan. In Saipan. And Saipan is a territory which was governed supposedly by rule of law. And so if the gangsters had no qualms killing someone on Saipan, a territory governed by rule of law, how would one – how could one expect the very same gangsters to show mercy to petitioners in China while the corruption runs rampant? Do we have to go beyond the record in order to grant the relief that you ask for? I gather what you want is a result. No, Your Honor. I think the record by itself is a subpoena to support the respondent's claim. Since your client cooperated with the Department of Homeland Security, which resulted in a number of prosecutions, and since the BIA disagreed with the immigration judge, would you have any objection if this case were referred to mediation? No, Your Honor. All right. Thank you, Your Honor. And also, my time is up. Thank you. If you don't think you're shooting in the family, reasonable inferences from established facts is acceptable, isn't it? Well, Your Honor, good morning. May it please the Court. My name is Jacob Asher. I'll let you get to that. I'm here on behalf of the Attorney General of the United States. Well, the record in the instant case does not really show that the drug gangsters in China torture people. We don't have anything to suggest the same. That's why I asked you about reasonable inferences. There are no, I believe there are no reasonable inferences. That's correct. What I think your moment points us to say is that if they do A, B, and C, it's not a wide step to say they'd also do B. That's correct, Your Honor. Your Honor, it's a slippery slope. And in this case, which is governed by the Ninth Circuit decision, Zhang v. Ashcroft, 332 F. 3rd, 1186, the Court's decision in that case was limited to the drug trafficking. And the evidence in that case was overwhelming. And as we can see, the petitioner in that case testified that he himself was a victim of drug traffickers' mistreatment when he was in the boat. He was assaulted. Then he submitted affidavits from other people who were smuggled into the United States, and they were also abused by the drug traffickers, sorry, by the smugglers. There were also numerous reports in the record that substantiated his claim. And most importantly, the United States Congress in passing the victims of trafficking. Let's say it was Zen. Zen had overwhelming evidence. That's right. And Zen won, right? Yes. Does that tell us what the required minimum of evidence is? Well, Your Honor, this case is... Yes or no? Yes. It does? In other words, unless you achieve the evidence under Zen, the IJ commits an error of law by granting cap relief? Yes. Do you have any case that says that? Your Honor, well, this case is governed by the regulations that promulgated the Convention Against Torture. And petitioner is required to show that it is more likely than not, which is... But does Zen say, we have seen all the evidence here, and we say that this is the bare minimum which gets a person cap relief? Let's say that. Well, Your Honor, if I may elaborate, just to explain my position, because I think it's very difficult to say yes or no. Zen required awareness, and it didn't require actual knowledge of torture. It required awareness, and it required willful blindness to the activity that constituted torture by government officials. I believe, Your Honor, that's the minimum standard that was set by Zen, which imposes upon the immigration court a standard that they require to look at the evidence and see whether the government is aware. I couldn't agree more. But the question is, is there anything in Zen which says the evidence adduced by Zen is the minimum evidence which allows a finding of awareness and willful blindness? Your Honor, no. I just want to clarify, because I thought that you asked in the context of the cap relief. That's why I stated yes. Now, taking off the question asked by Judge Nelson, do you agree that our standard of review here is de novo? No. Why not? Your Honor, the standard was promulgated by Elias Zechariah's case, the Supreme Court case, and it was put in the statute by, I believe it's 8 U.C. 1252, small b for capital B, which requires the court to review the findings by the agency on the substantial evidence. Well, if that were so, stay with me for just a second. Yes, Your Honor. I think the BIA acknowledged the credibility of the petitioner, right? Yes. And acknowledged that she had a genuine subjective fear. Yes. But found that her objective evidence of awareness, willful blindness, acquiescence, and probable torture failed because she did not testify as to specific incidents of gangsters torturing, pardon the language, snitches, right? That's correct. All right. Where in the statute is there a requirement that an evidentiary minimum is particularized evidence as to the particular source of torture threat? Your Honor, there is no specific claim. There isn't. So she testified that there was generalized systemic corruption in China. The country reports show the same. And, indeed, the country reports show that the corruption extends to human trafficking, prostitution, kidnapping, slavery, right? Yes. She says if they close their eyes to that, they close their eyes to gangsters torturing snitches. What's wrong with that argument? Your Honor, she has a burden of proof. The burden of proof is in her hands. Are you saying that the Board of Immigration Appeals was correct in saying you don't carry the burden of proof as a matter of law unless you bring in particularized evidence of gangsters torturing snitches with acquiescence by Chinese officials to show particularized evidence? That's what the BIA said, isn't it? That's right. Is BIA right in reading the law that way? Can't general evidence carry the weight when there's no contrary evidence? That's a very good question, Your Honor. It's very difficult to answer yes or no. And the reason why is that there are steps that the petitioner has to go through in order to demonstrate regulations, awareness, and willful blindness. In order to establish acquiescence, which consists of awareness and willful blindness, the petitioner has to submit evidence that demonstrates that the government of China is aware of torture. And she said the government is corrupt. They're in the hands of whoever pays the most money. It's the gangsters. It's gangsters. And the BIA said the respondent's testimony is insufficient to do so. She did not describe any particular instances in which the government has been aware of gangsters' reprisal, killings, or other torturous activity and failed to intervene. There's not any citation to any authority by the BIA as to a rule of law which requires particularized evidence of particularized gangster reprisals against snitches with government acquiescence. So where did they get that? Your Honor, I believe that the interpretation is entitled to deference and under substantial evidence standard. That's where we go back to the standard of review. In order to find that, the petitioner is not required to submit any evidence and It's entitled to deference to the fact that to the extent that there isn't objective, conclusive evidence to the contrary. Yes. In order for the court to find that petitioner mad and burn of proof in this case, the court has to equate acquiescence to corruption. Let me ask you this. Let me take off on your reference to deference. Is it your point that the BIA is entitled to deference in interpreting the statute as to what is the probability of acquiesced torture? The board is entitled to deference in its interpretation of the regulations and the statute under the Immigration and Nationality Act. And part of that deference is that they can require as a element of proof, particularized gangster tortures against informants. And that's the case. Do you have the authority? Your Honor, of course indulgence. Your Honor, I don't have any authority to that, but I don't think I can say that. In its interpretation of Zhang, the board viewed that petitioner was required, in addition to her subjective fear, and specifically I'll tell you that under the Realty Act, which has changed the evidentiary burden in that respect, the board viewed that that evidence submitted by petitioner, which was her subjective fear, was insufficient to carry her burden of proof. And that... Well, the board weighed the evidence rather than reviewed it under a clear understanding, correct? That's correct. Right. Now, when the board does that and weighs the evidence, then we can review what the board did, and we see it de novo too, can't we? Well, but the board did not do the fact-finding. There is no fact-finding. It just goes to the weight of the evidence, Your Honor. All right. I think I understand your point. All right. I think you're out of time. Thank you very much. Thank you, Your Honor. And thanks for getting out, and congratulations on getting out of Washington and coming. Thank you, Your Honor. It's a miracle. Congratulations. But there was also some joy on your part to be able to do it, I would imagine. Yes, Your Honor. Counsel, let me ask you this. We asked of Mr. Lee, do you have any objection... Let me tell you this. At least I'm impressed, and I think Judge Nelson's also impressed, and I'll speak for Judge Farris, but with the fact that this witness turned over approximately six or seven other drug persons who were convicted. One of them got away, but at least they were convicted. She was of service to the United States of America in its drug prosecutions. Would you object to this case being sent to mediation for a discrete period of time to see if you can work out some disposition? Your Honor, I cannot commit myself at this particular point. I need to get back to D.C. and talk to my superiors in that respect. Would you send us a letter within 10 days as to what your superiors think about mediation? Yes, Your Honor. All right. Thank you. Thank you.
judges: Farris, Nelson D. W., Bea